IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| LINDA B. HUNTER, individually and on behalf of all others similarly situated,<br><br>　　Plaintiff,<br>v.<br><br>QRS, INC.,<br><br>　　Defendant. | Case No.: 3:21-CV-00407-JRG-DCP |
| GERALD LEE, individually an on behalf of all other similarly situated,<br><br>　　Plaintiff,<br>v.<br><br>QRS, INC.,<br><br>　　Defendant. | Case No.: 3:21-CV-00425 |

**PLAINTIFFS' MOTION TO APPOINT
INTERIM CO-LEAD COUNSEL UNDER FED. R. CIV. P. 23(g)(3)**

Pursuant to Federal Rule of Civil Procedure 23(g)(3), Plaintiffs Linda B. Hunter and Gerald Lee ("Plaintiffs"), individually and on behalf of all others similarly situated, respectfully move for an order appointing as co-lead interim class counsel: (i) Gary M. Klinger of Mason Lietz & Klinger, LLP and; (ii) William B. Federman of Federman & Sherwood (collectively, "Proposed Interim Co-Lead Counsel").[1]

---

[1] Prior to filing this Motion, Plaintiffs' counsel contacted counsel for Defendant and Defendant's counsel indicated that Defendant takes no position on the relief sought in this Motion.

## I. INTRODUCTION

Beginning on November 30, 2021, Plaintiffs filed the first of two above-captioned class action cases against Defendant QRS, Inc. ("QRS" or "Defendant") that are currently pending in this District (the "Related Actions"). The Related Actions arise out of the recent, targeted cyber-attack that allowed a third party to access the computer systems and data of QRS, a vendor and business associate that provides medical care providers with practice management software and other services. *Hunter*, Dkt. 1, ¶ 19. The cyber-attack and subsequent data breach resulted in the compromise of highly sensitive personally identifiable information ("PII") and protected health information ("PHI") belonging to more than 320,000 consumers from Defendant's computer networks (the "Data Breach"). *Id.*, ¶¶ 31-37. Due to Defendant's failure to safeguard confidential information, at least 320,000 consumers have had their confidential information stolen. *Id.* The confidential private information includes, at least, certain personal or protected health information was compromised, including names, addresses, dates of birth, Social Security numbers, diagnosis information, patient identification numbers, medication information, portal username, and/or medical treatment or diagnosis information (the "Private Information"). Plaintiffs have all alleged that the criminals were able to gain access as a result of Defendant's failure to implement and follow adequate security procedures.

Plaintiffs all learned that they were victims of the Data Breach, and each decided to file their respective class actions in the weeks that followed. Plaintiffs Hunter and Lee were the first to file their respective actions in this District. Through their respective class actions, Plaintiffs allege a combination of the following causes of action against Defendant:

Negligence; Breach of Implied Contract; and Unjust Enrichment. On January 12, 2022, Plaintiffs moved, pursuant to Rule 42, to consolidate their related actions.

Plaintiffs now respectfully request that this Court appoint (i) Gary M. Klinger of Mason Lietz & Klinger, LLP and; (ii) William B. Federman of Federman & Sherwood as Interim Co-Lead Counsel. Counsel for Defendant does not oppose the relief sought by Plaintiffs herein.

As detailed below, Proposed Interim Co-Lead Counsel are unquestionably experienced and knowledgeable, and they possess ample resources and have worked hard to identify and investigate the factual and legal claims in this action. Each of the proposed Interim Co-Lead Counsel have earned lead counsel appointments based on many years of successfully prosecuting data-breach cases. Considering this proven track record, Proposed Interim Co-Lead Counsel respectfully submit that appointing them to manage this litigation would best serve the interests of the proposed class.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 23(g)(3) permits the appointment of interim lead counsel "to act on behalf of putative class members before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3); (*cited in Adedipe v. U.S. Bank, Nat'l Ass'n*, Nos. 13-2687 (JNE/JJK), 13 22944 (JNE/JKK), 2014 WL 835174, at *2 (D. Minn. Mar. 4, 2014)); *see also Moehrl v. Nat'l Ass'n of Realtors*, No. 19-cv-01610, 2020 WL 5260511, at *1 (N.D. Ill. May 30, 2020). Designating lead counsel now ensures the protection of the interests of the class in making and responding to motions, conducting discovery, and negotiating possible settlements. *See Roe v. Arch Coal, Inc.*, No. 4:15-cv-

3

910, 2015 WL 6702288, at *3 (E.D. Mo. Nov. 2, 2015) (finding it in the best interests of the class to appoint interim class counsel even when no other counsel competed for appointment); *Syzmczak v. Nissan N. Am., Inc.*, Nos. 10 CV 7493(VB), 12 CV 2149(VB), 2012 WL 1877306, at *1 (S.D.N.Y. May 15, 2012) (citing *Manual for Complex Litig.* § 21.11 (4th ed. 2004)).

Determining the appointment of lead class counsel requires the court to consider counsel's: "(1) work in identifying and investigating potential claims; (2) experience in handling class action and complex litigation and the types of claims asserted in the action; (3) knowledge of the applicable law; and (4) available resources." *Adedipe*, 2020 WL 835174, at *2 (citing Fed. R. Civ. P. 23(g)(1)(A)). The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The purpose of this Court's review is to ensure that counsel appointed to leading roles are "qualified and responsible, that they will fairly and adequately represent all parties on their side, and that their charges will be reasonable." *Manual for Complex Litig.* § 10.22. The ultimate goal is "achieving efficiency and economy without jeopardizing fairness to parties." *Id.* § 10.221; *see also Cappello v. Franciscan All., Inc.*, No. 3:16-CV-290-TLS-MGG, 2017 WL 781609, at *3 (N.D. Ind. Feb. 28, 2017). Ultimately, no single factor is determinative; instead, a court should appoint counsel after evaluating all relevant considerations and comparing the relative strengths of counsel. *See* Fed. R. Civ. P. 23(g)(1)(A)–(B); 7B Charles Alan Wright et al., *Fed. Prac. & Proc.* § 1802.3 (3d ed. 2005).

4

### III. ARGUMENT

Proposed Interim Co-Lead Counsel abundantly satisfy all the requirements for appointment by the Court under Fed. R. Civ. P. 23(g)(3). The attorneys have successfully litigated numerous class actions involving data breaches and privacy claims on behalf of millions of consumers. Proposed Interim Co-Lead Counsel possess the necessary resources to prosecute this litigation, have the support of the Plaintiffs from both cases on file, are working together collectively already, and will continue to work in this fashion to manage this litigation effectively and efficiently. Moreover, Proposed Interim Co-Lead Counsel have previously and repeatedly worked together to successfully prosecute data-breach class actions across the country. Because Proposed Interim Co-Lead Counsel have the case-management and complex-litigation skills, experience, knowledge of the relevant facts and legal issues, and extensive resources needed to efficiently prosecute this action, the Court should grant Plaintiffs' motion.

#### A. Proposed Interim Co-Lead Counsel Have Performed Substantial Work Investigating and Litigating the Claims to Date.

One factor Courts consider is the work and resources counsel expend investigating the claims being asserted when appointing lead counsel. *See, e.g., Adedipe*, 2014 WL 835174, at *3 (appointing interim class counsel because they "devoted the more substantial effort towards pre-suit investigation and identification of claims"). Here, immediately after the public announcement of the data breach involving Defendant, Proposed Interim

Co-Lead Counsel began investigating potential legal claims and remedies for the victims of the breach, including Plaintiffs. Those investigations included, among other things:

- Investigating the facts surrounding the data breach;
- Interviewing numerous consumers injured by the data breach;
- Researching legal claims;
- Drafting initial pleadings;
- Investigating and retaining experts in the area of data security and damages; and
- Organizing plaintiffs and counsel and consolidating the relevant actions for unified proceedings.

The facts Plaintiffs allege are egregious in terms of the information exposed and the scope of victims affected. Accordingly, Plaintiffs' counsel worked to quickly organize and avoid any delay that could be caused by a leadership dispute to address the merits of the case as expeditiously as possible. Work assignments have been, and will continue to be, allocated fairly and in a manner that takes advantage of the strengths of each firm while eliminating any duplicity.

Proposed Interim Co-Lead Counsel operate as a cohesive, well-organized group. Going forward, and if appointed, Proposed Interim Co-Lead Counsel will establish a standardized protocol for managing and reporting time and expenses incurred to prosecute the case as efficiently as possible. Accordingly, the substantial work and investigation to date weigh in favor of appointing Proposed Interim Co-Lead Counsel under Fed. R. Civ. P. 23(g)(3), as Proposed Interim Co-Lead Counsel are organized, unified, and committed to working together for the best interests of the class.

### B. Proposed Interim Co-Lead Counsel Possess the Necessary Experience and Skill to Prosecute This Action.

Proposed Interim Co-Lead Counsel possess the experience and skill to prosecute this action efficiently and effectively. As set forth below, their résumés include extensive experience leading or helping to lead complex data-breach and privacy class actions, including most of the major data breach cases in the United States. They will formulate and present positions on substantive and procedural issues during the litigation. *See Manual for Complex Litigation* § 10.221 ("Typically [lead counsel] act for the group—either personally or by coordinating the efforts of others—in presenting written and oral arguments and suggestions to the court, working with opposing counsel in developing and implementing a litigation plan, initiating and organizing discovery requests and responses, conducting the principal examination of deponents, employing experts, arranging for support services, and seeing that schedules are met."). Courts have found that proposed leadership's experience and service as lead counsel in prior cases is particularly persuasive. *See, e.g.*, *Adedipe*, 2014 WL 835174, at *2 (finding class-action and complex litigation leadership experience relevant for appointment).

Plaintiffs propose that the Court designate Gary M. Klinger and William B. Federman to be Interim Co-Lead Counsel. As demonstrated below, these attorneys have substantial class-action and data-breach experience and knowledge that will benefit the putative class as this litigation proceeds.

### 1. Gary M. Klinger

Mr. Klinger, a Partner at Mason Lietz & Klinger, LLP, has extensive experience serving as leadership in numerous class action data breach cases and other complex class actions. He is presently litigating more than fifty class action cases across the country involving privacy, data breaches, and ransomware. In the last two years alone, Mr. Klinger settled on a class-wide basis, preliminarily or finally, more than 25 privacy class actions, the majority of which were data breaches, where he served as lead or co-lead counsel. Indeed, Mr. Klinger recently obtained preliminary approval of a class-wide settlement valued at $17.6 million for a major data breach class action involving more than six million consumers. *See Carrera Aguallo v. Kemper Corp.*, Case No. 1:21-cv-01883 (N.D. Ill. Oct. 27, 2021) (where Mr. Klinger, as appointed co-lead counsel, obtained preliminary approval of a $17.6 million settlement to resolve similar data breach class claims against Kemper Corporation in a case involving more than 6 million class members). Mr. Klinger presently serves as one of two Court-appointed Lead Counsel in the data breach case *In re Canon U.S.A. Data Breach Litig.*, No. 1:20-cv-06239-AMD-SJB (S.D.N.Y. filed Dec. 23, 2020). Mr. Klinger was also appointed Co-Lead Counsel in the data breach case of *In re: Herff Jones Data Breach Litigation*, Master File No. 1:21-cv-1329-TWP-DLP (S.D. Ind.), which involves more than one million class members and has settled on a class-wide basis.[2] Mr. Klinger further serves as co-lead counsel in the consolidated data breach litigation styled *In Re: CaptureRx Data Breach Litigation*, No. 5:21-cv-00523-OLG (W.D. Tex.), which

---

[2] Mr. Klinger also serves as appointed co-lead counsel to represent more than 3 million class members in another major data breach class action in the Seventh Circuit. *See In re Arthur J. Gallagher Data Breach Litigation*, No. 1:21-cv-04056 (N.D. Ill.).

8

involves more than 2.4 million class members and has settled on a class-wide basis. Simply put, Mr. Klinger and the attorneys at his law firm have substantial experience handling data security and data privacy cases like this one, including some of the largest data privacy litigation in the United States. *See, e.g., Baksh v. Ivy Rehab Network, Inc.*, No. 7:20-cv-01845-CS (S.D.N.Y. Jan. 27, 2021) (Class Counsel in a data breach class action settlement involving 125,000 individuals with a settlement value of $12.8 million; Final Approval granted); *Mowery v. Saint Francis Healthcare Sys.*, No. 1:20-cv-00013-SRC (E.D. Mo. Dec. 22, 2020) (appointed Class Counsel; settlement value of over $13 million); *Jackson-Battle v. Navicent Health, Inc*., No. 2020-CV-072287 (Ga. Super. Ct. Bibb Cnty. filed Apr. 29, 2020) (appointed Class Counsel in data breach case involving 360,000 patients; settlement valued at over $72 million); *Chatelain v. C, L & W PLLC*, No. 50742-A (Tex. 42d Dist. Ct. Taylor Cnty. filed Apr. 28, 2020) (appointed Class Counsel; settlement valued at over $7 million); *In re Dep't of Veterans Affs. (VA) Data Theft Litig.*, No. 1:06-MC-00506, 2007 WL 7621261 (D.D.C. Nov. 16, 2007) (unlawful disclosure of PII of 28.5 million military veterans and active duty personnel; $20 million settlement fund); *In re Google Buzz Priv. Litig.*, No. C 10-00672 JW, 2011 WL 7460099 (N.D. Cal. June 2, 2011) ($10 million settlement fund in case arising from unauthorized disclosure of personal information).[3]

Mr. Klinger has also successfully litigated privacy class actions through class certification. In *Karpilovsky v. All Web Leads, Inc*., No. 17 C 1307, 2018 WL 3108884, at

---

[3] Additional information regarding Mr. Klinger and his firm is set forth in MLK's firm resume, attached hereto as **Exhibit A.**

*1 (N.D. Ill. June 25, 2018), Mr. Klinger certified, over objection, a nationwide privacy class action involving more than one million class members. *Id*. In a recent nationwide privacy class settlement hearing in the U.S. District Court for the Northern District of California, Judge Richard Seeborg personally commended Mr. Klinger for "quite a substantial recovery for class members." *See* **Exhibit B**. Judge Seeborg further stated he could not recall any class action case where "the amounts going to each class member were as substantial" as that obtained by Mr. Klinger (and his co-counsel). *Id*.

2. **William B. Federman**

Mr. Federman has ample experience in data breach litigation. Notably, Mr. Federman serves as co-lead counsel in the consolidated multi-party data breach case *In re: Brinker Data Incident Litigation*, Case No. 3:18-cv-686-J-32MCR (M.D. Fla.). Not only did the *Brinker* plaintiffs survive a motion to dismiss, *Brinker* is the first payment card data breach case to be certified as a class action in a contested hearing.

Mr. Federman has litigated multiple data breach class actions, including as lead counsel. Federman & Sherwood has served as lead counsel or co-lead counsel in over 60 class actions. Mr. Federman, in addition to the *Brinker* case, is co-lead counsel in *In re: Solara Medical Supplies Data Breach Litigation,* Case No. 3:19-cv-00284-H-KSC (S.D. Cal.), another consolidated class action data breach case with similar causes of action to this case. The parties in *Solara* recently reached a settlement after the plaintiffs in *Solara* survived the defendant's motion to dismiss and were well into discovery. Mr. Federman was also recently appointed co-lead counsel in *In re: Mednax Services, Inc., Customer Data Security Breach Litigation*, Case No. 21-md-02994-RAR (S.D. Fla.), another

consolidated data breach involving the unauthorized disclosure of private health information. Mason Lietz & Klinger is also involved in *Mednax*.

Mr. Federman, the founder of Federman & Sherwood, has more than thirty-nine (39) years of diverse, hands-on, trial, appellate and data breach, complex financial fraud, commercial, consumer, and class action litigation experience, representing both plaintiffs and defendants in federal and state courts as well as arbitration forums across the United States, with extensive experience in complex e-discovery matters. Mr. Federman has litigated claims similar to those asserted here in other data breach cases at the top management levels as well as extensive experience as lead counsel in other consumer class actions and MDLs. Additional information regarding Mr. Federman and his firm, including a select list of cases where Mr. Federman has served or is serving as lead or co-lead counsel, is set forth in Mr. Federman's CV, attached hereto as **Exhibit C**. Federman & Sherwood maintains offices in Oklahoma City and Dallas, Texas and is one of the leading AV-rated plaintiff law firms in the country. The firm has been retained by all classes of plaintiffs, from large closely held corporations to average individual citizens. Because of its success, Federman & Sherwood has assisted in numerous cases to fund litigation expenses in excess of $1 million.

**C. Proposed Interim Co-Lead Counsel Have Committed, and Will Continue to Commit, the Resources Necessary to Fairly and Adequately Represent the Class.**

A court appointing interim class counsel should consider, in part, the resources that counsel will commit to representing the putative class. Fed. R. Civ. P. 23(g)(1)(C). Here, Proposed Interim Co-Lead Counsel can, as needed, draw upon the skills and talents of

11

experienced attorneys and staff members located across the country. Each attorney understands the time, energy, and skill necessary to lead this litigation and all have committed the resources required to ensure the effective and efficient representation of the Class members. In fact, Proposed Interim Co-Lead Counsel have already demonstrated their commitment to this litigation by devoting substantial resources to this litigation and coordinating among themselves to file this leadership proposal. They are also expected to pay assessments when necessary to ensure that adequate funds are available to prosecute this litigation. And, as their firm résumés and counsels' experience indicate, Proposed Interim Co-Lead Counsel have the resources to see this litigation through to its conclusion, including trial. Exs. A, C.

### D. Other Factors Support Designating Proposed Interim Co-Lead Counsel.

Notably, the proposed leadership structure has the support of all Plaintiffs and firms involved in the first filed cases in this litigation. *See In re Aluminum Phosphide Antitrust Litig.*, No. 93-2452, 1994 WL 481847, at *5, 7 (D. Kan. May 17, 1994) ("In designating lead counsel, the court will also give due consideration to the preferences expressed by the parties themselves, through their counsel." "Absent persuasive evidence to the contrary, the court assumes that nominations and votes for lead counsel are made in good faith for reasons that benefit the client."); *see also In re Wendy's Co. S'holder Derivative Litig.*, No. 1:16-cv-1153, 2018 WL 6605394 at *2 (S.D. Ohio Dec. 17, 2018) (quoting *Kubiak v. Barbas*, No. 3:11-cv-141, 2011 WL 2443715, at *2 (S.D. Ohio June 14, 2011) ("[C]ounsel's ability to make inclusive efforts on behalf of all plaintiffs is an 'essential

attribute' for lead counsel.")); *Moehrl v. Nat'l Ass'n of Realtors*, No. 19-cv-01610, 2020 U.S. Dist. LEXIS 164895, at *10 (N.D. Ill. May 30, 2020) ("And all Plaintiffs in this action have consented to the proposed leadership structure."); *Manual for Complex Litigation* §§ 10.22 (noting desirability of "the attorneys coordinat[ing] their activities without the court's assistance"), 10.272 (describing "private ordering" approach).

Indeed, after the first two cases were filed, Proposed Interim Co-Lead Counsel moved quickly to coordinate the proposed leadership structure to avoid any delay attendant with potential multi-district litigation proceedings due to the egregious nature of Defendant's alleged unlawful conduct and likelihood of imminent further harms to Plaintiffs and the class members. Proposed Interim Co-Lead Counsel seek this leadership structure to best serve the interests of the class in the most efficient manner possible.

Proposed Interim Co-Lead Counsel and the attorneys at their respective law firms also reflect the diversity of the bar and the class they seek to represent—from the standpoint of age, gender, experience, and geographic location. *See* Bolch Judicial Institute, Duke Law School, *Guidelines and Best Practices for Large and Mass-Tort MDLs* at 38, 45-46 (2d ed. 2018), *available at* https://judicialstudies.duke.edu/wp-content/uploads/2018/09/MDL-2nd-Edition-2018-For-Posting.pdf ("Duke Guidelines") ("The judge's primary responsibility in the selection process is to ensure that the lawyers appointed to leadership positions are capable and experienced and that they will responsibly and fairly represent all plaintiffs, keeping in mind the benefits of diversity of experience, skills, and backgrounds.").

13

Another important consideration in selecting leadership is the ability to work well as a team, with opposing counsel, and with the Court. The role of leadership in complex litigation places a premium on professionalism, cooperation, courtesy, and acceptance of the obligations owed as officers of the Court, all of which are critical to successful management of the litigation. *See Manual for Complex Litigation* § 10.21. One of the demanding aspects of complex litigation is "the difficult[y] of having to communicate and establish effective working relationships with numerous attorneys (many of whom may be strangers to each other)." *Id*. Unlike defense counsel, the plaintiffs' side of consolidated litigation must quickly and effectively merge together to form an alliance against often well-financed opponents, as is the case here. This process has the potential for disorganization, in-fighting, and inefficiencies. It is useful to consider whether counsel applying for leadership "have worked together in other cases, their ability to collaborate in the past, divide work, avoid duplication, and manage costs." Duke Guidelines, *supra*, at 43. Selecting lawyers who have previously worked together has many benefits. They have developed working relationships, know of complementary talents, and have "developed certain systems for handling workflow and comparative advantages that will help expedite the case relative to a leadership committee working together for the first time." *Id.*

Nowhere could these sentiments be truer than among the counsel proposed for Proposed Interim Co-Lead Counsel. For instance, counsel from Federman & Sherwood and Mason Lietz & Klinger are currently working together on several major data breach class actions involving millions of consumers. *See, e.g., In re: Mednax Services, Inc.*,

14

Case No. 21-md-02994 (S.D. Fla.); *Powers v. Filters Fast, LLC*, 20-cv-00982 (W.D. Wis.).

Importantly, Proposed Interim Co-Lead Counsel have not made any agreements with each other with respect to funding, cost-sharing, pooling clients, fees, or any other matter. They all understand that they will be required to make contributions to fund the litigation, and they will not accept any third-party litigation funding to do so.

While Proposed Interim Co-Lead Counsel intend to litigate the case zealously, they are fully aware of the Court's expectation that they prosecute the case efficiently and without duplication. Accordingly, they have already discussed how best to organize to effectively use their members' diverse skills and unique experiences for the efficient prosecution and management of this litigation, while avoiding unnecessary and duplicative billing. As mentioned above, if appointed, Proposed Interim Co-Lead Counsel will establish a protocol for regular time and expense reporting to monitor and manage the efficient prosecution of this action.

## V. **CONCLUSION**

For all these reasons, Plaintiffs respectfully request that this Court Gary M. Klinger and William B. Federman as Proposed Interim Co-Lead Counsel.

January 12, 2022                                Respectfully submitted,

*/s/ John T. Spragens*
John Spragens, TN BPR No. 31445
**SPRAGENS LAW PLC**
311 22nd Ave. N.
Nashville, TN 37203
T: (615) 983-8900

15

F: (615) 682-8533
john@spragenslaw.com

David K. Lietz**
**MASON LIETZ & KLINGER LLP**
5301 Wisconsin Avenue, NW
Suite 305
Washington, DC 20016
Tel: (202) 429-2290
dlietz@masonllp.com

Gary M. Klinger**
**MASON LIETZ & KLINGER LLP**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (202) 429-2290
gklinger@masonllp.com

William B. Federman*
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, Oklahoma 73120
(405) 235-1560
(405) 239-2112 (facsimile)
wbf@federmanlaw.com

*pro hac vice application to be filed*
*** admitted pro hac vice in Hunter*

*Counsel for Plaintiffs and the Class*

16

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of January 2022, a true and correct copy of the foregoing Plaintiffs' Motion to Appoint Interim Co-Lead Counsel with the Clerk of Court was served upon the following counsel of record via the Court's CM/ECF system:

Michael A. Malone
Polsinelli PC
401 Commerce Street, Suite 900
Nashville, TN 37219
(615) 259-1567
mmalone@polsinelli.com

*/s/ John Spragens*